UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH OLIVE,

        Plaintiff,        Case No.
                                  Hon.

v.

WEBER'S, INC. d/b/a WEBER'S
RESTAURANT AND BOUTIQUE
HOTEL,

        Defendant.

Joseph X. Michaels (P79084)
Croson, Taub & Michaels PLLC
Attorneys for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
jmichaels@ctmlawyers.com

### PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, Joseph Olive, by and through his attorneys, Croson, Taub & Michaels, PLLC, hereby alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Joseph Olive, is a former employee of Defendant Weber's Inc., d/b/a Weber's Restaurant and Boutique Hotel, and a resident of Washtenaw County, Michigan.

2. Defendant, Weber's Inc., d/b/a Weber's Restaurant and Boutique Hotel ("Weber's") is a Michigan Corporation County, Michigan, with its registered agent and principal place of business located in Ann Arbor, Washtenaw County, Michigan.

3. This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under federal law.

4. Jurisdiction over supplemental state law claims is proper under 28 U.S.C. § 1367 as they arise from the same case and controversy.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## STATEMENT OF FACTS

6. Plaintiff, Joseph Olive, began his employment with Defendant Weber's in May 2023 as a bartender at their hotel on Jackson Rd. in Ann Arbor Michigan.

7. Plaintiff is a Black/African American male.

8. At all relevant times, Plaintiff was qualified for the positions he held and performed his job diligently and competently.

9. Throughout his employment, Plaintiff was repeatedly subject to racial and sexual harassment by Weber's management and fellow employees. And when he complained of these issues, he was summarily terminated.

10. Specially the General Manager of Weber's Restaurant, Christian Cooper, repeatedly made unwelcome and unwanted sexual advances toward Plaintiff.

11. Initially, Ms. Cooper repeatedly asked Plaintiff to show her pictures of what he wore to the gym, would make comments on his appearance, stated she wondered what he looked like under his clothes, and asked what he wore to bed.

12. One time, while she was in the office, she had other managers help her locate Plaintiff's social media accounts. When she was able to find his page, she told Plaintiff she "would go home and admire" his photos—and winked.

13. Ms. Cooper's harassment was also physical. On at least two occasions she told Plaintiff she liked his hair short and rubbed his head unprompted. Each time, Plaintiff rebuffed her and moved away.

14. Each of these comments made Plaintiff feel extremely uncomfortable, and he did not reciprocate any interest. He liked his job and simply continued working.

15. Ms. Cooper's harassment escalated, and her advances became even less subtle. She told Plaintiff "Maybe I should start dating you Joe I'm kind of a cougar"

16. Ms. Cooper also told him "maybe you should be my side dude because you're way hotter than my boyfriend." To which Plaintiff responded, "nah, I'm not really into that kind of thing." Ms. Cooper told him "you have to try it first."

17. Plaintiff also experienced harassment based on his race.

18. At relevant times, Plaintiff was the only Black bartender on staff at the restaurant. In August of 2023, Plaintiff began to get more shifts in the evening, which were more lucrative for bartenders. A white employee named Kayla began getting upset that Plaintiff got more shifts. In order to get these shifts, Kayla told customers to write negative feedback regarding Plaintiff.

19. Plaintiff believed this was in part due to his race.

20. As soon as Plaintiff learned of this, he reported it to Christina Cooper as well as Erin, the manager of the restaurant, and told them that he believed this was in part due to his race. He told them he "stuck out like a sore thumb" because he was the only black male bartender.

21. Nonetheless, Defendant retaliated by removing Plaintiff from the bartender schedule and having him barback for a far reduced wage.

22. Immediately after this complaint, Kayla began complaining about Plaintiff's "sidework," or the work that was required prior to closing, such as refilling stock of various drink items.

23. However, Plaintiff was diligent with all such work, and any errors were in line with those of his fellow, mostly white, co-workers.

24. His shift lead bartender, Renae, also repeatedly called him a "bitch" and told him he "wasn't a good look" for the hotel, and that because he "wasn't a good

look for Weber's, management will take my side". She also repeatedly told he should "go back to where he came from".

25. During the holiday season of 2023, Ms. Cooper became upset (ironically) that her boyfriend had cheated on her. After an outburst in the dining room, she told Plaintiff that "this must be a sign that we should be together." Plaintiff responded that he had actually started dating someone and was still not interested. He then walked away.

26. Ms. Cooper's harassment also began to affect the terms and conditions of Plaintiff's employment. In late December 2023, Plaintiff asked for new years off so that he could visit his new girlfriend in New York. Ms. Cooper told Plaintiff she was unsure if she could give him the day off because she wanted "to be [Plaintiff's] new year's kiss".

27. Plaintiff very sternly told Ms. Cooper "my girlfriend would not like that" and again conveyed he was not interested. Ms. Cooper appeared flustered and embarrassed.

28. Following Plaintiff's rejection of Ms. Cooper's advances, she retaliated and began to not communicate with Mr. Olive, and when she did was very curt and abrupt.

29. On January 28, 2024, Plaintiff learned from a server that Renae and another employee were once again discussing that Plaintiff "was not a good look for Weber's" and "needed to go back to where he came from.

30. On Tuesday January 30, 2024, Plaintiff texted Brian Weber, the Vice President of Weber's stating in part "whenever you have a moment I'd like to chat if it's possible."

31. Mr. Weber responded and the two met later that afternoon at approximately 3:00pm.

32. The two men spoke for approximately 30 minutes. Mr. Olive relayed to Mr. Weber his concerns both regarding Ms. Cooper's sexual harassment and the racial comments made by Renae and Kayla.

33. Mr. Weber told Plaintiff he would investigate the allegations, and Plaintiff thanked him for agreeing to do so.

34. At 5:12 that night, approximately two hours after their meeting, Mr. Weber texted Plaintiff the following:

> Hi joe, I investigated and was not able to establish that the comments were made with a racial bias. Thank you for reporting this to me. I am considering doing to [sic] sensitivity training with the team to further ensure workplace bias is not being tolerated. I'm still working on the other feedback you gave and we will follow up!

35. Plaintiff responded "Thanks brian, i really appreciate it"

36. ***The very next morning***, at 10:01 am, 29 minutes before Plaintiff's shift was scheduled to begin, Ms. Cooper left Plaintiff a voicemail asking Plaintiff to call her before his shift.

37. Plaintiff called back and the two spoke. Ms. Cooper told Plaintiff his employment was ending, and that it was a "team decision" but she couldn't say any more for legal reasons.

38. The real reason for Plaintiff's termination was discrimination based on his race, and retaliation for his complaints of race discrimination and sexual harassment.

39. Any other reason is pretextual.

## CAUSES OF ACTION

### COUNT I
### Race Discrimination in Contracting
### 42 U.S.C. § 1981

40. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

41. By the conduct described above, Defendant intentionally deprived Plaintiff, who is African American, of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendant in violation of 42 U.S.C. 1981.

42. Defendant's course of conduct was done with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to unlimited punitive damages.

43. As a result of Defendant's unlawful conduct, Plaintiff was harmed and continues to be harmed in that he has suffered economic and non-economic loss, including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

## COUNT II
### Retaliation
### 42 U.S.C. 1981

44. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

45. By the conduct described above, Defendant intentionally retaliated against Plaintiff for his opposition to Defendant's conduct which violated his right to creation, performance, enjoyment, and all benefits and privileges of a contractual employment relationship with Defendant, regardless of his race, in violation of 42 U.S.C. § 1981. *See CBOCS West, Inc. v. Humphries*, 552 U.S. 442 (2008).

46. Defendant's conduct was done with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to unlimited punitive damages.

47. As a result of Defendant's unlawful conduct, Plaintiff was harmed and continues to be harmed in that he has suffered economic and non-economic loss,

including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

## COUNT III
### Elliott-Larsen Civil Rights Act Race Discrimination
### M.C.L. 37.2202(1)(a)

48. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

49. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101.

50. Plaintiff is a member of a protected group because of his race (Black/African American).

51. Defendant subjected Plaintiff to adverse employment actions, up to and including termination.

52. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of his race.

53. But for Plaintiff's race, Defendant would not have terminated him.

54. Defendant's actions constituted unlawful discrimination on the basis of race in violation of MCL 37.2202(1)(a).

55. As a result of Defendant's unlawful conduct, Plaintiff was harmed and continues to be harmed in that he has suffered economic and non-economic loss,

including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

## COUNT IV
## Elliott-Larsen Civil Rights Act Sex Discrimination
## MCL 37.2202(1)(a)

56. Plaintiff incorporates by reference each preceding Paragraph as though fully restated herein.

57. At all relevant times, Defendant was an employer, and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act. MCL § 37.2101.

58. Plaintiff is a member of a protected group because of his sex, male.

59. Plaintiff was subjected to adverse employment actions, up to and including termination

60. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of his sex.

61. But for Plaintiff's sex, Defendant would not have terminated him.

62. Defendant's actions constituted unlawful discrimination on the basis of sex in violation of MCL 37.2202(1)(a).

63. As a direct and proximate result of Defendant's violation of the ELCRA, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and

embarrassment, and the physical effects associated therewith, and will so suffer in the future.

64. As a direct and proximate result of Defendant's violation of the ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT V
### Elliott-Larsen Civil Rights Act Sexual Harassment
### MCL 37.2202(1)(a)/MCL 37.2013(h)

65. Plaintiff incorporates by reference each preceding Paragraph as though fully restated herein.

66. At all relevant times, Defendant was an employer, and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act. MCL § 37.2101.

67. The Elliott-Larsen Civil Rights Act defines sex discrimination to include sexual harassment, including "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." MCL 37.2013(h)(i).

68. The Elliott-Larsen Civil Rights Act defines sex discrimination to include sexual harassment, including Submission to the conduct or communication

is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing" MCL 37.2013(h)(ii).

69. During Plaintiff's employment, employees and/or agents of Defendant made unwelcome sexual advances, and sexual remarks to, about, and/or in the presence of, Plaintiff.

70. The unwelcome conduct and remarks created a hostile work environment based on sex.

71. The unwelcome conduct had the purpose and effect of interfering with Plaintiff's employment.

72. This conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive.

73. Plaintiff found this conduct both objectively and subjectively offensive.

74. Defendant had both actual and constructive notice that its employees had created a hostile and offensive work environment for Plaintiff.

75. Defendant and its agents, knew of, condoned, failed to address, and/or participated in the hostile work environment created by its employees and agents.

76. This conduct was open and obvious throughout Defendant's workplace, and Defendant took no remedial actions.

77. As described above, Defendant also conditioned Plaintiff's conditions

of employment on submission to sexual conduct or communications.

78. As a direct and proximate result of Defendant's violation of the ELCRA, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

79. As a direct and proximate result of Defendant's violation of the ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT VI
### Elliott-Larsen Civil Rights Act Retaliation
### M.C.L. 37.2202(1)(a)

80. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

81. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101.

82. Plaintiff engaged in protected activity, including but not limited to reporting and opposing the race discrimination and sexual harassment.

83. Defendant subjected Plaintiff to adverse employment actions, up to and including termination.

84. Defendant's conduct was motivated by unlawful retaliation against Plaintiff because of his protected activity.

85. But for Plaintiff's protected activity, Defendant would not have terminated him.

86. As a result of Defendant's unlawful conduct, Plaintiff was harmed and continues to be harmed in that he has suffered economic and non-economic loss, including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

## **RELIEF REQUESTED**

For the foregoing reasons, Plaintiff, Joseph Olive, demands judgment against Defendant as follows:

a. Compensatory damages for monetary and nonmonetary loss in whatever amount he is found to be entitled;

b. Exemplary and punitive damages in whatever amount he is found to be entitled;

c. A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled;

    d. An order of this Court reinstating Plaintiff to the position he would have if there had been no wrongdoing by Defendant;

    e. An injunction of this Court prohibiting any further acts of discrimination by Defendant;

    f. An award of costs, interest, and reasonable attorney fees; and

    g. Whatever other equitable relief this Court finds appropriate.

Respectfully submitted,
Croson, Taub & Michaels, PLLC

*/s/ Joseph X. Michaels*
Joseph X. Michaels (P79084)
CROSON, TAUB, & MICHAELS, PLLC
455 E. Eisenhower Pkwy, Suite 75
Ann Arbor, Michigan 48108
(734) 519-0875
jmichaels@ctmlawyers.com
*Attorney for Plaintiff*

Dated: July 17, 2024

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOSEPH OLIVE,

        Plaintiff,　　　　　　　Case No.
　　　　　　　　　　　　　　　　　　Hon.

v.

WEBER'S, INC. d/b/a WEBER'S
RESTAURANT AND BOUTIQUE
HOTEL,

        Defendant.

---

Joseph X. Michaels (P79084)
Croson, Taub & Michaels PLLC
Attorneys for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
jmichaels@ctmlawyers.com

---

**PLAINTIFF'S JURY DEMAND**

Plaintiff, Joseph Olive, by and through his attorneys, Croson, Taub & Michaels, PLLC hereby demands a trial by jury as to all issues so triable.

                                    Respectfully submitted,
                                    Croson, Taub & Michaels, PLLC

                                    */s/ Joseph X. Michaels*
                                    Joseph X. Michaels (P79084)
                                    CROSON, TAUB, & MICHAELS, PLLC
                                    455 E. Eisenhower Pkwy, Suite 75

                                                                     Ann Arbor, Michigan 48108
                                                                     (734) 519-0875
                                                                     jmichaels@ctmlawyers.com

Dated: July 17, 2024                                     *Attorney for Plaintiff*